**Kieran CONNELL, Plaintiff,**

v.

**CITY OF NEW YORK, Defendant.**

**No. 00 CIV.6306 (SAS).**

United States District Court,
S.D. New York.

Sept. 23, 2002.

Kieran Connell, Hull, MA, Plaintiff (Pro Se).

Donald C. Sullivan, Assistant Corporation Counsel, New York, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Kieran Connell, proceeding pro se, served the defendant City of New York with a second Amended Complaint on May 26, 2001,[1] alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12001 *et seq.* ("ADA"). On July 9, 2001, defendants[2]

---

1. Plaintiff's first Amended Complaint, which contained over 1,000 paragraphs and numerous exhibits, was dismissed with leave to replead because the pleading violated Federal Rule of Civil Procedure ("Rule") 8(a).

2. Plaintiff's first Amended Complaint listed the following defendants:

The City of New York, the New York City Police Department, the Honorable Rudolph Giuliani, Mayor for the City of New York, NYC Corporation Counsel employee Charles M. Martinez,
New York City Police Dept: Chief Michael Markman, Chief Greggory Fried, Deputy Chief Theobald Reich, Captain Victor Werbkay, Captain John Doe Rongo, / Inspec-

moved to dismiss the Amended Complaint and on January 8, 2002, defendants' motion was granted in part and plaintiff's Title VII claims and ADA discrimination claims were dismissed. *See Connell v. City of New York*, No. 00 Civ. 6306, 2002 WL 22033, at \*3–4 (Jan. 8, 2002). The only surviving claim is plaintiff's ADA retaliation claim against the City of New York.[3] *See id.* at \*4.

Defendant now moves to dismiss the action pursuant to Rules 37 and 41 for failure to comply with the rules of discovery and failure to prosecute. Plaintiff, in turn, has moved to strike defendant's Answer as untimely under Rules 12(f), 6(b)(1), 6(b)(2) and 15(a). For the following reasons, defendant's motion is granted and this case is dismissed. Such dismissal will be stayed, however, for a period of thirty days from the date of this Opinion to afford plaintiff one final opportunity to

cure his non-compliance. Plaintiff's motion to strike defendant's Answer is denied.

## I. FACTS

At an initial conference held on January 14, 2002, this Court set a discovery deadline of May 17, 2002. *See* Transcript of January 14, 2002 Conference ("Tr."), Ex. A to the Declaration of Donald C. Sullivan, Assistant Corporation Counsel, in Support of Defendant's Motion to Dismiss Pursuant to Federal Rules 37 and 41 ("Sullivan Decl."), at 15. At this conference, details of plaintiff's ADA retaliation claim were fleshed out to give defendant a better understanding of plaintiff's grievances including the protected activity and the alleged retaliatory acts. *See* Tr. at 4–12. Defendant informed the Court that it had not yet filed an Answer and sought direction regarding the same. *See id.* at 17 (Mr.

---

tors/District Surgeons, Charles Michael Martinez, John Doe Axelrod, Herbert Fox, Edward Harvey Axelrod, Stanley Edelman, Stuart Eigen, Staff Nurses Nilsa McNamara, Jane Doe Quinn, Lieutenants John Doe Wirsing, Jerry Mines, Jane Doe Burke, Steven Lancione, John Doe Nicholetti (Internal Affairs), Detectives John Doe Connolly, Bronx Special Victim's Squad, Ramon Martinez (Sibling of Insp. Charles Martinez), John Doe Dillon of the Special Frauds Squad, John Doe Erik Jonson of the Intelligence Division and Deputy Commissioners Office for Public Info., Sergeants John Doe Murphy or Murray, Dennis Beazer, Nannette Fernau (Medical Division), Francis Corrigans, Police Officers Greggory Manning, Joseph Guido John Doe Foyles, Traffic Division, John P. Young,
City of New York Pension Board/Employee Health Benefits/Worker's Compensation employees, Doctors Keith A. Siller, Nicole L. Sasson, Gilbert H. Young, Louis Lombardi, Harold Bernanke, Jonathon Klug, Hosein Firooznia,
NYU Medical Center employees James Volcker, aka Volker, and N. Sasson, K. Siller, G. Fried, T. Reich, E. Axelrod, J. Klug, H. Firooznia, acting as Agents for the Defendant City of New York,

Demotech Corporation of Ohio acting as Agent for the City of New York, and Ladd Grapski, and individually, Kevin Michael Grapski,
Attorneys Richard Dienst, Barry Washor, Lambros Lambrou and Dr. Jonathon Korn as Agents of the Defendant City of New York,
Accountant Albert Sasson as Agent for the defendant City of New York,
Unknown on info and belief, City Employees Ramon Rodriguez, Carmen and Carlos Martinez, other John Does, Jane Does unidentified at this time.
*See* List of DEFENDANTS, Attached to Amended Complaint.

3. Plaintiff alleges that he suffered retaliation because he complained to various city officials of disability discrimination by certain members of the New York City Police Department ("NYPD"). *See Connell*, 2002 WL 22033, at \*4. However, because the NYPD is not a suable entity, plaintiff's retaliation claim can only proceed against the City of New York. *See id.* Furthermore, all of the individual defendants were dismissed because individuals cannot be held liable under Title VII or the ADA.

Sullivan: I am confused as to how to answer the complaint because so much of it has been dismissed. Do you want me to file a formal answer, I assume, and [sic] based on the information I received this afternoon? The Court: Yes, that's fine. Okay.). The case was referred to Magistrate Judge Frank Maas for settlement. *See id.* at 16.

Judge Maas scheduled a settlement conference for April 12, 2002. *See* March 8, 2002 Letter from Donald Sullivan to Kieran Connell, Ex. B to Sullivan Decl. Hoping to take plaintiff's deposition before the settlement conference, the City served plaintiff with discovery requests on March 8, 2002, and noticed plaintiff's deposition for April 9, 2002. *See id.* The settlement conference did not go forward on April 12, 2002, but was adjourned to April 24, 2002. *See* April 8, 2002 Letter from Donald Sullivan to Judge Maas, Ex. C to Sullivan Decl. On April 8, 2002, plaintiff advised defendant that he would be unable to be deposed in New York City prior to April 24, 2002. *See* Sullivan Decl. ¶ 8. The settlement conference was again adjourned to the afternoon of May 17, 2002, and plaintiff's deposition was re-scheduled for that morning. *See id.* ¶ 12. Because plaintiff was not deposed by May 17, the settlement conference was once again adjourned to May 29, 2002. *See* Sullivan Decl. ¶¶ 22–23.

In response to a letter dated April 8, 2002 from Kieran Connell to this Court requesting that his deposition be conducted telephonically or in writing due to financial constraints, Sullivan wrote the Court explaining why such request should be denied. *See* April 12, 2002 Letter from Donald Sullivan, Ex. D to Sullivan Decl. (stating that a telephonic deposition would prevent defense counsel from observing plaintiff's demeanor and would encumber the production of documents during the deposition). In this letter, Sullivan also informed the Court that plaintiff verbally

raised the issue of amending his complaint once again. *See id.* at 4. With regard to the filing of an Answer, Sullivan wrote: "I note that defendant has not yet filed an Answer to the Amended Complaint, as it was restated by plaintiff at the January 14, 2002 conference. Defendant respectfully requests guidance from the Court as to whether defendant should file an Answer at this time, or wait for a determination on plaintiff's anticipated request for further amendment." *Id.* at 4–5.

Sullivan wrote the Court again on May 17, 2002, requesting that the Court order plaintiff be deposed on May 29, 2002. *See* Ex. E to Sullivan Decl. The Court endorsed this letter on May 20, 2002, ordering that plaintiff appear at the Office of Corporation Counsel for deposition on May 29, 2002. *See id.* Plaintiff was also directed to respond to all outstanding discovery requests by that date. *See id.* Finally, the endorsement informed the parties that "Failure to appear may result in dismissal of [plaintiff's] case." *Id.* Sullivan wrote the Court again on May 22, 2002, requesting permission to file an Answer on or before June 12, 2002, two weeks after plaintiff's court-ordered deposition. *See* Ex. F to Sullivan Decl. This request was granted on May 23, 2002 by way of letter endorsement. *See id.*

On the morning of May 29, 2002, plaintiff called Sullivan and told him he would not be attending his deposition. *See* Sullivan Decl. ¶ 22. No explanation for this cancellation has been provided. The settlement conference before Judge Maas was held nonetheless, with plaintiff participating by telephone. *See id.* ¶ 23. Apparently, the issue of the timing of the Answer was raised by one of the parties as "Judge Maas explained that typically an Answer is filed before a deposition, but that there is no per se rule requiring that sequence." *Id.* Judge Maas instructed plaintiff to call

Sullivan to schedule his deposition. *See id.* Defendant filed its Answer on June 12, 2002.

In a last ditch effort, Sullivan wrote plaintiff on June 2, 2002, noticing plaintiff's deposition for June 7, 2002. *See* Ex. G to Sullivan Decl. On June 5, 2002, plaintiff advised Sullivan, by facsimile and voice-mail message, that he could not attend the June 7 date because he had "No $." Ex. F to Sullivan Decl. In his facsimile transmission, plaintiff noted that he was prepared to have his case thrown out by this Court. *See id.*

Plaintiff has yet to appear for his deposition. In addition, plaintiff has yet to respond to defendant's discovery requests. Presumably, the more important items requested include: plaintiff's income tax returns; releases to his former medical care professionals; and copies of tape recordings between plaintiff and some of defendant's employees. *See* Sullivan Decl. at ¶ 28.

## II. DISCUSSION

### A. Defendant's Motion to Dismiss

#### 1. Standard Under Rule 41—Failure to Prosecute

Under Rule 41, a defendant may move for dismissal of an action for plaintiff's failure to prosecute. *See* Fed.R.Civ.P. 41(b). In deciding a motion to dismiss under Rule 41, "[i]t is well established that a district court has the power to dismiss an action for failure to prosecute and that such a dismissal will be reviewed only for abuse of discretion." *Nita v. Connecticut Dep't of Envtl. Prot.,* 16 F.3d 482, 485 (2d Cir.1994) (citing *Link v. Wabash Railroad Co.,* 370 U.S. 626, 632–33, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). However, "dismissal is a 'harsh remedy to be utilized only in extreme situations.'" *Romandette v. Weetabix Co., Inc.,* 807 F.2d 309, 312 (2d Cir. 1986) (quoting *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972)

(per curiam)). Under Rule 41, five factors are used to determine whether dismissal is warranted:

(1) the duration of the plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) whether the district judge has taken care to strike the balance between alleviating court congestion and protecting a party's right to due process and a fair chance to be heard, and (5) whether the judge has adequately assessed the efficacy of letter sanctions.

*Shannon v. General Elec. Co.,* 186 F.3d 186, 193 (2d Cir.1999).

#### 2. Standard Under Rule 37—Failure to Cooperate with Discovery

Rule 37(d) expressly provides for dismissal as a sanction where a plaintiff fails to appear for his deposition after being served with a proper notice. *See* Fed. R.Civ.P. 37(d) (cross-referencing to Rule 37(b)(2)(C) which authorizes a court to dismiss an action or proceeding for failure to comply with a discovery order). "The imposition of sanctions under Rule 37 is within the discretion of the district court and a decision to dismiss an action for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." *Bobal v. Rensselaer Polytechnic Inst.,* 916 F.2d 759, 764 (2d Cir.1990) (internal quotation marks and citations omitted). Furthermore, when dismissal is appropriate under Rule 37, a court need not address Rule 41(b). *See Salahuddin v. Harris,* 782 F.2d 1127, 1133–34 (2d Cir.1986).

As with dismissals under Rule 41, dismissal under Rule 37 is also a harsh sanction that is to be used only in extreme situations. *See Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 71 (2d Cir.1988)

(stating that although "preclusion of evidence and dismissal of the action are harsh remedies and should be imposed only in rare situations, they are necessary to achieve the purpose of Rule 37 as a credible deterrent"). Before a court can dismiss an action under this Rule, it must: (1) find willfulness, bad faith, or fault on the part of the party refusing discovery, and (2) give notice, especially to a pro se litigant, that violation of the court's order will result in dismissal of the case with prejudice. *See Simmons v. Abruzzo,* 49 F.3d 83, 88 (2d Cir.1995).

### 3. Mitigating Circumstances

■ In his opposition, plaintiff attempts to justify his failure to be deposed on the ground that such deposition was premature given defendant's failure to file an Answer. *See* Amended Affirmation in Opposition to Defendant's Motion to Dismiss ("Pl.Aff.") ¶¶ 2–9. Although in the typical case an Answer is filed before depositions are noticed, there is no per se rule requiring this sequence. In fact, a party can take the deposition of any person without leave of the court unless the deposition is noticed for a time prior to the parties' Rule 26(f) conference. *See* Fed.R.Civ.P. 30(a)(2)(C) (cross-referencing to Rule 26(d) which states that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)"). Whether service of the Answer was truly a concern of plaintiff or whether it was an after-the-fact rationalization for his failure to be deposed is an open question. The latter seems more likely given that plaintiff never complained of defendant's failure to file an Answer but instead filed a motion for default judgment on May 22, 2002. *See* Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss, With Prejudice, Plaintiff's Claims, Under Rules 37 and 41, For Failure to Prosecute at 6. In any event, defendant's failure to provide plaintiff with an Answer prior to taking plaintiff's deposition provides some justification for plaintiff's refusal to be deposed, but not much.

Of greater weight is plaintiff's argument that the financial burden of coming to New York, albeit the chosen forum, is formidable given plaintiff's indigence. *See* Pl. Aff. ¶ 18. There is a general presumption that a plaintiff who chooses a particular forum should be prepared to be deposed in that forum. *See Clem v. Allied Van Lines Int'l Corp.,* 102 F.R.D. 938, 939 (S.D.N.Y.1984) (stating that "this Court has long enunciated the policy of requiring a non-resident plaintiff who chooses this district as his forum to appear for deposition in this forum absent compelling circumstances."). However, "there is no absolute rule as to the location of the deposition of a nonresident plaintiff" as "courts must strive to achieve a balance between claims of prejudice and those of hardship." *Normande v. Grippo,* No. 01 Civ. 7441, 2002 WL 59427, at *1 (S.D.N.Y. Jan.16, 2002). Moreover, in applying this general rule "a court may consider external constraints on the plaintiff's choice of forum." *Abdullah v. Sheridan Square Press, Inc.,* 154 F.R.D. 591, 593 (S.D.N.Y.1994) (citing *Ellis Air Lines v. Bellanca Aircraft Corp.,* 17 F.R.D. 395, 396 (D.Del.1955) ("There is a principle that a plaintiff having selected a particular forum for the adjudication of his case should be prepared to answer a notice of deposition in that locality. This principle loses some weight where the plaintiff has no choice of forum but, as here, must bring his suit in one particular jurisdiction or none at all.")). Accordingly, "courts have permitted nonresident deponents to be deposed where they live, when they have been able to show financial hardship." *Normande,* 2002 WL 59427, at *2.

A stay of dismissal is warranted for several reasons. *First,* plaintiff has shown sufficient financial hardship to support his

claim that coming to New York for his deposition would be very difficult. *Second,* plaintiff had no choice but to bring suit in the Southern District of New York as his claims involve the New York City Police Department. *Third,* plaintiff only violated one court order, namely the endorsement on Sullivan's May 17, 2002 letter directing that he be deposed on May 29, 2002. *Fourth,* that endorsement did not explicitly state that the dismissal of plaintiff's case would be with prejudice.

Accordingly, plaintiff is hereby ordered to appear for deposition, by video conferencing, within 30 days from the date of this Order. A video conference deposition should resolve any concerns defense counsel has over observing plaintiff's demeanor. All documents should be pre-marked and sent to plaintiff in advance of the deposition date. This will reduce any difficulty in identifying documents during the deposition. The parties are directed to contact Mr. Joel Blum of this Court's Audiovisual Department to make arrangements for video conferencing between this Courthouse and the federal courthouse in Boston, Massachusetts. Mr. Blum is hereby directed to assist the parties in this effort. In addition, plaintiff is ordered to produce his income tax returns for the 1997–2001 tax years, releases to any health care providers he saw between 1997 and 1999, and any copies of tape recordings made between himself and any employees of defendant. Such production shall take place within ten days from the date of this Opinion. If plaintiff complies with these directives, the dismissal order will be vacated.

## B. Plaintiff's Motion to Strike Defendant's Answer

### 1. Rule 6(b)

Rule 12(a) establishes the time period for filing an answer and Rule 6(b) permits the court to grant an enlargement of time.[4] Fed.R.Civ.P. 12(a); Fed.R.Civ.P. 6(b). Under Rule 6(b)(2), a defendant who has missed a filing deadline must move to enlarge the time for filing and must demonstrate that the failure to file was the result of "excusable neglect." Fed.R.Civ.P. 6(b)(2); *see generally Traguth v. Zuck,* 710 F.2d 90, 93–94 (2d Cir.1983). Such enlargements of time are within the sound discretion of the court. *See id.*

Notwithstanding the excusable neglect requirement, "district courts regularly exercise their discretion to deny technically valid motions for default."[5] *Sony Corp. v.*

4. When by these rules ... an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect....

Fed.R.Civ.P. 6(b).

5. The *Sony* court cited the following cases in support of this proposition:

See, e.g., *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981) (noting that 10 day delay in responding to amended complaint would not lead to default judgment); *Moriani v. Hunter,* 462 F.Supp. 353, 354–55 (S.D.N.Y. 1978) (21 day delay in filing answer where defendant's attorney mistakenly believed that defendant had not been served); *see also McKnight v. Webster,* 499 F.Supp. 420, 424 (E.D.Pa.1980) (technical default where defendant sought extension of time to file answer but did not present answer to clerk to file while request for extension was pending; permission to file answer nevertheless granted because no showing of prejudice to plaintiff); *Dr. Ing. h.c.F. Porsche, AG v. Zim,* 481 F.Supp. 1247, 1248 n. 1 (N.D.Tex.1979) (answer filed 4 days after motion for default judgment filed, but no entry of default made by clerk; motion for default judgment denied). *But see United States v. York Construction Co.,* 25 F.R.D. 478, 479–80 (D.N.D.1960) (motion for permission to file answer denied where defendant failed to establish excusable neglect).

*Sony,* 800 F.2d at 319.

*Elm State Elecs., Inc.,* 800 F.2d 317, 319 (2d Cir.1986).

### 2. Rule 12(f)

Under Rule 12(f), a court may strike from any pleading an insufficient defense or any other redundant, immaterial, impertinent, or scandalous matter. Fed. R.Civ.P. 12(f). However, motions to strike are generally disfavored and will be denied unless it is clear that under no circumstances could the defense succeed. *See William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.,* 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986). To this end, a defendant's pleading must be construed liberally. *See Estee Lauder, Inc. v. Fragrance Counter, Inc.,* 189 F.R.D. 269, 271 (S.D.N.Y.1999). "A motion to strike an affirmative defense should be denied where the defense is sufficient as a matter of law or fairly presents a question of law or fact that the court should hear at trial." *Resources Funding Corp. v. Congrecare, Inc.,* No. 91 Civ. 8163, 1994 WL 24825, at *3 (S.D.N.Y. Jan.21, 1994). Finally, to prevail on a motion to strike, the movant must show that he will be prejudiced by inclusion of the defense. *See Metrokane, Inc. v. The Wine Enthusiast,* 160 F.Supp.2d 633, 641–42 (S.D.N.Y.2001).

### 3. Defendant's Request to File a Late Answer

█ Plaintiff argues that defendant was required to answer the Amended Complaint that was discussed at the January 14, 2002 conference within ten days of that conference. *See* Pl. Aff. ¶ 11. Plaintiff also argues that defendant's May 22, 2002 letter, requesting permission to file an Answer by June 12, 2002, did not comply with the requirements under Rule 6(b). *See* Plaintiff's Memorandum of Law in Support of Motion to Strike Answer at 5. Neither argument justifies striking defendant's Answer.

At the January 14 conference defendant conceded that it had not yet filed an Answer.[6] *See* Tr. at 13. At the end of the conference, defense counsel asked the Court whether he should file an Answer based on the information learned at the conference. *See* Tr. at 17. While the Court responded in the affirmative, no date was set for filing the Answer. Then, in a letter dated April 12, 2002, defense counsel notified the Court that he had not yet filed an Answer. *See* Ex. D to Sullivan Decl. at 4. In anticipation of yet another Amended Complaint, "[d]efendant respectfully request[ed] guidance from the Court as to whether defendant should file an Answer at this time, or wait for a determination on plaintiff's anticipated request for further amendment." *Id.* at 4–5. Then,

---

**6.** The fact that defendant had not filed an Answer by January 14 was fully justified given the procedural posture of this case. Plaintiff's first Amended Complaint, which contained over 1,000 paragraphs and numerous exhibits, was served on defendant on January 30, 2001. Defendant was granted a brief extension, until March 14, 2001, in which to respond. Rather than answer such a prolix complaint, defendant moved to dismiss the Amendment Complaint on March 20, 2001. This motion was granted and plaintiff's Amended Complaint was dismissed on April 27, 2001, with leave to replead. Plaintiff then filed a second Amended Complaint on June 29, 2001, which again was confusing, repetitive and disorganized. Defendant's time to move to dismiss or answer was extended to July 9, 2001 by way of letter endorsement. On July 9, 2001, defendant again moved to dismiss the Amended Complaint. Defendant's motion was granted in part and denied in part on January 8, 2002. The pre-trial conference was then held on January 14, 2002, at which time the theories of plaintiff's second Amended Complaint were more fully developed.

upon learning of plaintiff's motion for a default judgment, defense counsel wrote the Court on May 22, 2002, requesting permission to file an Answer on or before June 12, 2002. *See* Ex. F to Sullivan Decl. In that letter, defense counsel stated that it was his understanding that defendant was to file an Answer after plaintiff's deposition. *See id.* Given that plaintiff's deposition was scheduled for May 29, 2002, I granted defendant's request. *See id.*

Rule 15(a) provides that "[a] party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, *unless the court otherwise orders.*" Fed. R.Civ.P. 15(a) (emphasis added). By granting defendant's request to file an Answer by June 12, 2002, this Court ordered otherwise. The fact that defendant may not have complied with the technicalities of Rule 6(b) is of little import. Such non-compliance must be viewed in the context of the changing or evolving nature of plaintiff's Amended Complaint and the possibility of a second Amended Complaint.

Moreover, plaintiff has shown no prejudice resulting from the late filing of defendant's Answer. Given plaintiff's repeated discovery failures, he is hardly in a position to criticize defendant's tardiness. In fact, plaintiff appears to have purposefully refrained from complaining of defendant's failure to answer for a strategic reason, namely, the filing of a motion for default judgment. The doctrine of "unclean hands" comes to mind—a party seeking to strike an Answer must himself be fully compliant with all previous and proper discovery demands. Plaintiff was undeniably non-compliant without justification, at least with respect to defendant's document request. Furthermore, defendant's Answer, aside from denying most of plaintiff's allegations, contain four significant affirmative defenses. It would be inappropriate not to resolve important legal issues on the merits. For all of these reasons, plaintiff's motion to strike defendant's Answer as untimely is denied.

## III. CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is granted but stayed for a period of thirty days from the date of this Opinion. If plaintiff complies with the directives set forth herein, his case will proceed and a conference will be held on October 18, 2002 at 4:30 p.m. At this conference, at which plaintiff will be permitted to appear telephonically, the remaining discovery items will be discussed and a revised Scheduling Order will be entered. The Clerk of the Court is directed to close these motions.

SO ORDERED.